### REID COAL CO. v. NICHOLS.†

(Court of Civil Appeals of Texas. Jan. 28, 1911. On Motion for Rehearing, April 29, 1911.)

MASTER AND SERVANT (§ 107*)—INJURY TO SERVANT—MAKING PLACE SAFE FOR WORK—LIABILITY.

The rule that the master is not liable for injuries to a servant while engaged in making a dangerous place safe does not apply where a coal digger, in preparing an entry in a mine for props, is not working at his own instance and discretion and according to his own plan, knowledge, and judgment but is doing the work at the time and in the manner directed by the vice principal.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–212, 254, 255; Dec. Dig. § 107.*]

Appeal from District Court, Wood County; R. W. Simpson, Judge.

Action by W. L. Nichols against the Reid Coal Company. Judgment for plaintiff. Defendant appeals. Affirmed on rehearing.

Harris, Suiter & Britton and Cockrell, Gray & Thomas, for appellant. Bozeman & Campbell, for appellee.

RAINEY, C. J. W. L. Nichols, appellee, as plaintiff below, brought this suit against

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error granted by Supreme Court.

the Reid Coal Company, appellant, as defendant below, to recover damages for personal injuries received by him while working as a coal digger in defendant's mine.

Plaintiff alleged, in substance: "That at the time of the injury he, with other employés of defendant, was digging an entry, street, or lane in defendant's coal mine, and to prevent the overhead coal and dirt from falling props or timbers were to be placed by it, through its pit boss, Wash Seaton, or manager of the mine, W. D. Russell, whose duty it was to furnish and place and have placed said props or timbers; and that a short while before it fell on plaintiff and injured him he considered it might become dangerous and injure him if he continued work therein and so notified its pit boss, Wash Seaton, who came and examined the roof in question and requested him to continue his work, directed him where and how to work, and promised plaintiff he would have same propped before it became dangerous, and before there was any danger of it falling on him, and believing same would be propped as promised, and that there was no danger in continuing working, plaintiff relied upon same, and that an ordinary person would have continued as he did. He further pleaded, and the undisputed evidence showed, that it had not been propped, and that there were no props under the roof at all."

The appellant, the Reid Coal Company, a corporation, besides excepting to plaintiff's petition, pleaded in answer, general denial, assumed risk, and contributory negligence on the part of appellee, and, further, that if appellee was injured, it was the result of and caused by the acts of a fellow servant of appellee.

A trial resulted in a verdict and judgment for plaintiff for $3,500, and the defendant appeals.

The majority of the court direct a reversal of this case for the refusal of the lower court to give the following charge, requested by the defendant, viz.: "You are instructed that if you find from the evidence in this cause that plaintiff, W. L. Nichols, and his fellow servant, G. W. Cunningham, were engaged in preparing the entry in which the cave-in occurred (if you find from the evidence that the cave-in did occur), for propping the roof of said entry and making it a safer place, and that said cave-in or falling of the roof occurred while they were so engaged in preparing it to be made a safe place in which to work, then you will find for the defendant, and so say by your verdict."

One Seymour, plaintiff's witness, on cross-examination, testified: "At the time this dirt fell in there, plaintiff and Cunningham were shaping up; they were working with their picks, cutting and squaring up; fixing for the timbers; they were doing work preparatory to making the place a safe place in which to work; they were straightening it up to put in some timbers there. I had never been working in that mine before that day." On direct examination he had stated: "Plaintiff was trimming up; fixing to put in some timbers; I suppose he was working with his pick. He and Mr. Cunningham were squaring up to put in some props, which work they had been directed to do by Mr. Seaton, the pit boss." This testimony raised the issue presented by the special charge requested, and the court erred in not giving it.

In support of the position that the action of the court was error, counsel cites Henson v. Armour Packing Co., 113 Mo. App. 618, 88 S. W. 166, and argues: "If the master is to be held liable for injuries resulting from accidents occurring while his servants are engaged in making a dangerous place safe, then we would be laying down the rule or proposition that the master must insure the safety of his servant while engaged in such work." The case cited is where a carpenter of 14 years' experience in repair work of various kinds for defendant was directed to place in an excavation additional braces to prevent the caving of the bank, to make it safe, and while doing so the bank caved and injured him. The carpenter had assisted originally in putting in the shoring to secure the wall or bank. The court held that the danger was obvious and patent, and that plaintiff "evidently understood the situation," and therefore assumed the risk, and the court says: "When the work in hand is dangerous for the reason that it is to secure and make safe an unsafe place, the rule, as generally applied, that the master must furnish the servant a safe place in which to work can have no application. To say that a man can have a safe place to work in an unsafe place is an absurdity."

While the writer does not question the rule announced in the foregoing decision, he questions its applicability to this case, and he cannot concur in the disposition of this case made by the majority. The defendant, among other things, pleaded "that it was a rule and custom of defendant in opening of said mine and in the mining and working out of entries from the bottom of the shaft to place timbers and props of the distance of about three feet and a half or five feet, as might be deemed necessary, on either side of the entry, with a heavy beam or collar bar laid on the top of said props, and then laying on the top of said beams or collar bar heavy boards or timbers for the support of the roof above; that in the process or operation of extending the entries from the bottom of the shaft, should it be discovered that any part of the roof of the mine should need supporting or bracing before a sufficient distance had been mined to put in other props and collar bars, then the rule and custom was, as plaintiff well understood, to place a post or prop with a cap thereon, to support or brace the roof until the room or entry had been extended to the usual distance of 3½

feet, when permanent props and collar bars would be put in, all of which was well known and understood by plaintiff at the time he is alleged to have been injured; that at the time plaintiff is alleged to have been injured one permanent set of props and collar bars, with necessary timbers above, had been put in, and the entry had been extended by plaintiff and other miners to about the proper distance of putting another set of props, with collar bars and timbers above, and that at the time he is alleged to have been injured the defendant, through its pit boss, Wash Seaton, and employés under him, were engaged in said mine at said place in putting in the necessary props and collar bars—that is to say, they were cutting into the walls of the entry the necessary recesses and niches in which to place said props upon which to place the collar bars; and just previous to the alleged falling in of the roof of said entry the defendant's pit boss, Wash Seaton, had requested and directed plaintiff, W. L. Nichols, to go to work at a place on the opposite side of said shaft, where the necessary props and timbers had been placed and at which he could work in safety, and until he could put in the necessary props and timbers at the place where plaintiff was then working, and called plaintiff's attention to the fact that if he continued to work where he was then working before he (Seaton) could put in the necessary props and timbers, the roof or dirt above him might fall on him, and told plaintiff that it was dangerous to continue to work there; that, notwithstanding the instructions given plaintiff to work at the other side of the shaft, in a place of safety, plaintiff disobeyed said instructions and continued of his own volition to work at the place where he is alleged to have been injured, with full knowledge of the risks, dangers, and hazards thereof and after he had been warned of such dangers and hazards."

Defendant did not specifically plead that plaintiff was doing work preparatory to making the place safe, nor that he was one of the employés under Seaton, whose duty it was to prepare the place for placing the props. I think the evidence clearly shows that plaintiff was a coal digger; that it was not his duty to assist in putting in props, but that it was the duty of Seaton to have that work done, in order that plaintiff and others might have a safe place to work. The case was tried on the alleged negligence of plaintiff; that it was plaintiff's duty to keep the place properly propped, and the court correctly charged the jury on that issue, on contributory negligence and assumed risk.

Our Supreme Court, in Railway Co. v. Bingle, 91 Tex. 287, 42 S. W. 971, in an opinion by Mr. Gaines, Chief Justice, has clearly laid down the rule of assumed risk, as follows: "The servant by entering the employment of the master assumes all the ordinary risks incident to the business, but not those arising from the master's neglect. It is the duty of the master to exercise ordinary care to furnish him a safe place in which to work, safe machinery and appliances, to select careful and skillful co-workers, and in case of a dangerous and complicated business to make such reasonable rules for its conduct as may be proper to protect the servants employed therein. The servant has the right to rely upon the assumption that the master has done his duty; but, if he becomes apprised that he has not and learns that the machinery is defective, the place unnecessarily dangerous, or that proper rules are not enforced, he assumes the risk incident to that condition of affairs, unless he informs the master and the latter promises to correct the evil. In this latter event, so long as he has reasonable grounds to expect and does expect that the master will fulfill his promise, he does not by continuing in the employment assume the additional risk arising from the master's neglect. If he then be injured by reason of that neglect, he may recover, provided it be found that a man of ordinary prudence, under all the circumstances, would have encountered the danger by continuing in the service. This we understand to be the rule in the English courts. It is the rule in the Supreme Court of the United States, and is supported by the weight of authority."

The evidence in this case was conflicting as to whether or not the defendant had promised to make the place safe, but I believe it was amply sufficient to show that the promise to make it safe had been made, and that plaintiff in working had grounds for expecting defendant would fulfill its promise. There is sufficient testimony to show that Seaton, defendant's vice principal, had told plaintiff the place was not dangerous and to go to work there, and that plaintiff believed and relied on Seaton's superior knowledge, and that the danger was not so patent and obvious as that the want of ordinary prudence on the part of plaintiff in continuing the work can be held as a matter of law, but was a question for the jury. If the facts be true, as above stated, and the jury has so found, the plaintiff was not guilty of contributory negligence, nor did he assume the risk, but he was relieved therefrom by the promise of defendant, whether he was working preparing a place for placing the props or not.

Believing the case has been properly tried, and that the justice of the case has been reached, I think the judgment should not be disturbed.

For the error in refusing the requested charge, as held by the majority of the court, the judgment is reversed and cause remanded.

### On Motion for Rehearing.

On reconsideration of this case, on appellee's motion for a rehearing, the majority of the court, upon whose opinion the case was

decided, have reached the conclusion that they erred in reversing and remanding the case. They are now of the opinion that the principle announced by the Supreme Court of the state of Missouri, in the case of Corby v. M. & K. Tel. Co., 132 S. W. 712, is applicable to the facts of the case, and should control the decision of the question upon which the present case was reversed.

In the case cited it is held, in effect, that the general rule of law that the master is not liable to the servant for injuries sustained while engaged in making a dangerous place safe, etc., has no application when the servant making the necessary repairs has no supervision or control over the work being done, is not his own boss, but is working under the control, orders, and directions of a foreman who has complete charge and control of the work, as well as of the servant doing the work; that in such a case the servant is not the representative of the master. The rule of law here stated is correct, and the facts in the present case bring it within that rule. The appellee was not executing the work in which he was engaged at the time of receiving his injuries at his own instance and discretion, and according to his own plans, knowledge, and judgment, but was doing the work at the time and in the manner he was directed to do it by appellant's vice principal, Seaton.

It follows that the majority of the court erred in reversing the case because of the court's failure to give the defendant's requested charge, which is set out in the original opinion, and appellee's motion for rehearing is granted, and the judgment of the lower court is affirmed.